IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | **FILED** |
| | : | |
| JOHN DOE subscriber assigned | : | FEB 0 2 2015 |
| IP address 69.249.253.94 | : | NO. 14-1280 |

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

MEMORANDUM

Dalzell, J.                                                                          February 2, 2015

Before us in this copyright infringement action are cross-motions for summary judgment.
Because we find that the plaintiff has failed to (1) make a prima facie case of copyright
infringement and (2) show that evidence allegedly spoliated was relevant to its claim, we will
deny plaintiff's motion for summary judgment and grant defendant's pro se motion for summary
judgment.

## I.     Standards of Review

### 1.     Summary Judgment

Summary judgment is warranted if there are no genuine issues of material fact and the
moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party moving
for summary judgment bears the burden of demonstrating no genuine issue of material fact
exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986). To
that end, the movant must inform the district court of the basis for its argument by "identifying
those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue
of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Where the movant is the
defendant or the party that does not have the burden of proof on the underlying claim, it "has no

obligation to produce evidence negating its opponent's case." <u>National State Bank v. Federal</u>

<u>Reserve Bank of New York</u>, 979 F.2d 1579, 1582 (3d Cir. 1992). The movant need only point to

the lack of evidence supporting the non-movant's claim. <u>Id.</u>

When both parties move for summary judgment, our task is no different. As our Court of

Appeals cautioned many years ago,

> Cross-motions are no more than a claim by each side that it alone
> is entitled to summary judgment, and the making of such
> inherently contradictory claims does not constitute an agreement
> that if one is rejected the other is necessarily justified or that the
> losing party waives judicial consideration and determination
> whether genuine issues of material fact exist. If any such issue
> exists it must be disposed of by a plenary trial and not on summary
> judgment.

<u>Rains v. Cascade Industries, Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968). Cross-motions must be

considered separately and should not be interpreted necessarily to mean that judgment should be

entered as to either one of them. Each party, as a movant for summary judgment, bears the

burden of establishing that no genuine issue of material fact exists and that he or it is entitled to a

judgment as a matter of law. 10A Charles Alan Wright and Arthur R. Miller, <u>Federal Practice &</u>

<u>Procedure</u>, §2720 (3d ed. 2014). As in any summary judgment motion, the determination

whether a genuine issue concerning a material fact exists is itself a question of law that the Court

must decide. It does not depend upon what either or both of the parties may have thought about

the matter. A party moving for summary judgment concedes the absence of a factual issue and

the truth of the nonmoving party's allegations only for purposes of its own motion. <u>Id.</u> As

Wright and Miller observe, "It follows that the legal theories the movant advances in support of a

Rule 56 motion and the assertion that there is no issue of material fact may not be used against

the movant when the court rules on his adversary's motion." <u>Id.</u>

The reviewing court should view the facts in the light most favorable to the non-moving

2

party and draw all reasonable inferences in that party's favor. <u>Scheidemantle v. Slippery Rock</u>
<u>Univ. State Sys. of Higher Educ.</u>, 470 F.3d 535, 538 (3d Cir. 2006). A factual dispute is
"genuine" if it turns on "evidence on which the jury could reasonably find for the plaintiff."
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). A fact is "material" if it "might
affect the outcome of the suit under the governing law." <u>Id.</u> at 248. That is, "only disputes over
facts that might affect the outcome of the suit under the governing law will properly preclude"
summary judgment. <u>Boyle v. County of Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir.
1998) (quoting <u>Anderson</u>, 477 U.S. at 248).

Because we consider cross-motions before us, "[t]he fact that one party fails to satisfy
that burden on his own Rule 56 motion does not automatically indicate that the opposing party
has satisfied his burden and should be granted summary judgment on the other motion." 10A
Wright & Miller at §2720. Both motions must be denied if we find there is a genuine issue of
material fact, but, if there is no genuine issue and one or the other party is entitled to prevail as a
matter of law, the court may render judgment. <u>Id.</u>

It is well-established that Rule 56 obliges the nonmoving party seeking to defeat a motion
for summary judgment "to go beyond the pleadings and by her own affidavits, or by the
'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts
showing that there is a genuine issue for trial.' " <u>Celotex</u>, 477 U.S. at 324; <u>see also</u> Fed. R. Civ.
P. 56(c). The nonmoving party must identify specific facts and affirmative evidence that
contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57. To prevail on a
motion for summary judgment, "the non-moving party must present more than a mere scintilla of
evidence; 'there must be evidence on which the jury could reasonably find for the [non-

3

movant].' " S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 256 (3d Cir. 2013) (quoting Anderson, 477 U.S. at 252) (internal citation omitted).

By the same token, if the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 322. As the Supreme Court observed in Celotex, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323 (internal quotation marks and citation omitted).

## 2. Copyright Infringement

To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work. Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002). "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the rights to distribute and reproduce copyrighted material." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005) (internal quotation and citation omitted).

But not all copying constitutes a copyright infringement. Our Court of Appeals has long held that the copying must constitute "improper appropriation." Id. at 208 (quoting Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904, 907 (3d Cir. 1975)); see also Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946). The Court explained in Kay Berry that the second part of the infringement inquiry "may be demonstrated by showing that the defendant had access to the

4

copyrighted work and that the original and allegedly infringing works share substantial similarities." Id. at 207-08 (citing Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991)). In our Circuit, "substantial similarity" turns on two considerations -- "(1) whether the defendant copied from the plaintiff's work and (2) whether the copying, if proven, went so far as to constitute an improper appropriation." Id. (internal citation omitted). The issue of substantial similarity is frequently a fact issue for jury resolution because the fact-finder may need to compare two works, see Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327 (9th Cir. 1983). But a court may determine non-infringement as a matter of law on a motion for summary judgment when no reasonable jury, properly instructed, could find that the two works are substantially similar. See Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905, 918 (2d Cir. 1980).[1]

### 3.    Spoliation

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. See West v. Goodyear Tire and Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

The duty to preserve applies only to relevant data, documents and things. As our Court of Appeals observed in Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994),

> Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Jamie S. Gorelick, Steven Marzen and Lawrence Solum, Destruction of Evidence, § 2.1 (1989). Such evidence permitted an inference, the "spoliation inference," that

---

[1] As the leading treatise explains, "Ordinarily both . . . works are attached to, and regarded, as a part of the pleadings. . . . Upon review of the works themselves, if the court concludes that no trier of fact could rationally determine the two to be substantially similar, it can render a defense judgment as a matter of law." 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright, §12.10[B][3] (Matthew Bender, Rev. Ed. 2014).

the destroyed evidence would have been unfavorable to the position of the offending party. As Judge Breyer put it in Nation-wide Check Corp. v. Forest Hills Distributors, Inc., 692 F.2d 214, 218 (1st Cir. 1982), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document." . . . .

Our Court of Appeals imposes a four-factor test to evaluate spoliation claims, under which we may find that spoliation occurs where: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Service, Inc., 665 F.3d 68, 73 (3d Cir. 2012). "The party who seeks a spoliation sanction bears the burden of proving these factors." Universal Underwriters Ins. Co. v. Dedicated Logistics, Inc., 2014 WL 7335668 at *4 (W.D.Pa. Dec. 19, 2014).

The decision to sanction is at the Court's discretion. Zubulake v. USB Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004); see also Schmid, 13 F.3d at 79.

## II.     Factual and Procedural History

Malibu Media produces and distributes adult films under the brand "X-Art". MSJ at 5. On February 28, 2014, it filed suit against an unknown defendant alleging a single count of direct infringement in violation of 17 U.S.C. § 501 et seq. See Cmplt. Specifically, the plaintiff claims that between September 2, 2013 and February 9, 2014 a person using the assigned Internet Protocol ("IP") address 69.249.253.94 downloaded fourteen movies to which Malibu Media holds the copyright. Id. at Ex. A. Malibu Media alleged that the "persistent online infringer" had relied on the BitTorrent file distribution network ("BitTorrent"), which it described as a popular peer-to-peer file sharing system that "allows users to interact directly with each other,

6

thus avoiding the need for intermediary host websites which are subject to [Digital Millennium Copyright Act of 1998 "DMCA"] take down notices and potential regulatory enforcement actions." Id. at ¶¶ 2 and 12. Malibu Media alleged that the so-called BitTorrent protocol breaks a file into small bits which users exchange and reconstitute using software on their own computers. Id. at ¶ 13. As to this defendant, the complaint alleged that "[a]fter the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized," thereby leaving a trace of the BitTorrent software's use. Id. at ¶ 14. Each bit of a BitTorrent file, as well as the entire digital media file, has a unique cryptographic hash value -- which Malibu Media characterized as its "unique digital fingerprint." Id. at ¶¶ 15-17. "Once infringers complete downloading all bits which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate." Id. at ¶ 17.

Malibu Media further claimed that its investigator, IPP International UG, established a direct connection with John Doe's IP address and downloaded bits from the digital movie files to "confirm[] through independent calculation that the file hash matched what was listed on Exhibit A," thereby verifying that the collected data correlating to each file hash contained a copy of the movie Doe allegedly infringed. Id. at ¶ 22. Incidental to its copyright infringement claim, Malibu Media alleged that Doe's IP address had been used to distribute 755 third-party files through BitTorrent between July 20, 2012 and February 17, 2014, showing that the defendant is a "persistent BitTorrent user". Id. at ¶¶ 25, 27. "Many of the titles to the third party works may also be relevant to proving [d]efendant is the infringer because they correlate to the [d]efendant's hobbies, profession, or other interests." Id. at ¶ 28.

On March 4, 2014, the plaintiff moved for leave to serve a third-party subpoena on

7

Comcast Cable, Doe's Internet Service Provider ("ISP"), and we granted that motion the following day. See March 5, 2014 Order. On April 3, 2014, Doe filed a motion to dismiss arguing that (1) the person using a device connected to the Internet at any given time is not necessarily the person to whom an infringing IP address is registered; (2) an Internet address may only show the address of the wireless router through which devices connect to the Internet and cannot reliably show who accessed the Internet at any particular time; (3) those realities make uncertain any efforts to identify the actual wrongdoer; (4) plaintiff can show only the location of the alleged infringing address through its software, not the identity of the alleged infringer; and (5) the investigator Malibu Media uses is not licensed to conduct private detective work in Pennsylvania. MTD at 2-7. Doe also sought to quash the Comcast subpoena and to be allowed to proceed anonymously. Id. at 2.

On May 19, 2014 we denied Doe's motion to dismiss because we agreed that plaintiff's claims pled factual content that allowed us to draw a reasonable inference of Doe's alleged liability and that Doe's motion raised factual issues about his identity more properly dealt with during discovery. See May 19, 2014 Order. We also denied Doe's motion to quash the subpoena because his proffered reasons fell outside the standards sets forth under Rule 45, id., but we granted his motion to proceed anonymously. Id. Once served, the defendant moved for a protective order regarding his computers and devices which we denied on October 23, 2014 and ordered him to make available for inspection by plaintiff's expert all computers, storage devices and electronic media in his possession. See October 23, 2014 Order.

On December 4, 2014, Malibu Media sought an Order authorizing a second third-party subpoena to serve on Comcast Cable to obtain records of alerts concerning excessive bandwidth use or Notices of Infringement that Comcast may have sent to Doe. We granted that motion as

8

unopposed. See December 5, 2014 Order. On December 23, 2014 Malibu Media filed an
unopposed motion for a protective order concerning the Comcast data because Comcast
conditioned its production on Malibu Media obtaining a protective order allowing any
documents produced to be designated "Confidential." Mot. at 2. In our January 6, 2015 Order
granting plaintiff's motion, we ordered that all such Comcast documents should be stamped
"Confidential" and shared only with the defendant or any counsel he may obtain. See January 6,
2015 Order.

The parties' motions for summary judgment followed. Both parties' motions and
responses were filed under seal pursuant to our May 19, 2014 Order.

## III.   Discussion

It is undisputed that Malibu Media owns valid copyrights to its movies. But the parties
dispute whether plaintiff has adduced any evidence to support its contention that defendant Doe
infringed its work.

We turn first to plaintiff's motion.

Malibu Media contends that its investigator, IPP International UG, established that the
defendant's computer was used to distribute third-party files using BitTorrent between July 20,
2012 and March 26, 2014 (although the relevant period is actually September 2, 2013 and
February 9, 2014, as stated in the complaint). Pl. SOF at ¶ 5. Defendant, a computer technician
familiar with BitTorrent, was the only resident of the apartment during the relevant period. Id. at
¶¶ 9, 10. Neither his wife nor son, both of whom largely reside elsewhere, could access his
Internet or knew how to use BitTorrent. Id. at ¶¶ 11-15. Malibu Media further contends that the
BitTorrent activity emanated from Doe's apartment "approximately 12 days each month for a
continuous period of 20 months," during which time Doe's computer was password-protected.

9

Id. at ¶¶ 16, 17.

On November 7, 2014 Malibu Media's expert, Patrick Paige, received images of Doe's four computer devices: an HP All-in-One PC; a laptop; and two desktop computers. Id. at ¶ 25. He used EnCase Version 6 and 7 and Internet Evidence Finder -- two popular forensic software programs, to analyze the hard drives. MSJ Ex. E at ¶ 40. The All-in-One hard drive showed neither BitTorrent use nor any of plaintiff's copyrighted works. Id. at ¶ 44. The laptop hard drive showed no BitTorrent activity, but revealed evidence that three USB storage devices had been connected -- the first sometime between January 13, 2013 and March 31, 2014, the next on September 12, 2013, and the third on September 4, 2013. Id. at ¶ 45. None of the USB storage devices was produced to plaintiff. Id. Using the forensic software, the first Desktop's hard drive produced evidence of more than 300 BitTorrent file fragments dated between 2005 and 2010. Id. at ¶ 47. The unallocated space on the hard drive also showed evidence of Torrent clients -- that is to say, software for the reception of BitTorrent files -- but the software had been removed on an indeterminate date. Id.; see also Paige Report Ex. A at 3.

The forensic software analysis of the second Desktop's hard drive produced evidence of "a data fragment referencing 'X-Art Angelica Good Night Kiss Preview'-- one of Malibu Media's copyrighted works listed within the Complaint for this lawsuit," but Paige was unable to determine when it was created. Id. at ¶¶ 48, 50. At Malibu Media's behest, he also examined the hard drive for evidence of third parties' works and found a single work belonging to another entity. Id. at ¶ 52. He also found evidence that a USB storage device called a Kingston Data Traveler G3 had been connected to that hard drive between August 19, 2013 and September 4, 2014. Id. at ¶ 53. That device had not been produced to him for examination.

On December 16, 2014, Malibu Media deposed John Doe. In his deposition, the

10

defendant repeated the assertion he made in his answers to plaintiff's interrogatories that he had neither installed nor deleted BitTorrent on any of his computers. Doe Dep. At 30:15-31:12. He denied having a Kingston Data Traveler G3, but admitted he owned another USB storage device which he used to copy files. Id. at 53:7-18. He stated he had turned over all computer devices in his possession, id. at 73:4, and denied ever using any form of BitTorrent. Id. at 75:20-77:11.

Discovery closed a week later without Malibu Media asking for or receiving the storage devices whose trace its expert found on two of Doe's computers. Malibu Media did not file a motion to compel production.

Malibu Media urges us to grant its motion because, it contends, it produced evidence of Doe's infringement: the 'X-Art Angelica Good Night Kiss Preview' snippet its investigator found. MSJ at 1. It argues (1) its evidence also shows the defendant misrepresented that he had never used BitTorrent when the Malibu Media expert found overwhelming evidence of third-party files; (2) defendant's answers were inconsistent; and (3) he never turned over storage devices. Id. at 1-2. Malibu Media maintains that Doe destroyed material evidence and perjured himself to escape liability for his actions. Id. at 7. It also argues that Doe's affirmative defense fail: Malibu Media has a valid copyright; it can show evidence as to the extent and duration of the alleged infringing activity; it is entitled to statutory damages. Id. at 9-15. The plaintiff contends Doe's defenses that he did not engage in any infringement or has an implied license are mere denials of his liability and that his other defense of unclean hands is unavailing. Id. at 15-18. [2]

---

[2] Plaintiff also contends that Comcast Cable sent Doe nine DMCA notices detailing copyright infringement from defendant's IP address. None of these alleged infringements involves Malibu Media's movies. See Pl. SOF at ¶¶ 20-24. Plaintiff redacted the Comcast Cable data despite our protective Order, as a result of which we cannot evaluate this putative disclosure. Pl. MSJ at Ex. I. Further, defendant contends that he did not receive a copy of the disclosure until January 13,

11

In his response in opposition, Doe points out that plaintiff's motion for summary judgment rests on its discovery of a single reference to "X-Art Angelica Good Night Kiss Preview." Resp. in Opp. at 1. "[T]his is not an exact match to any of their copyrighted files," Doe argues. Id. "Plaintiff's [e]xpert shows that beyond a name match (not even an exact one), there is no further evidence that proves this file fragment is even a piece of plaintiff's movies." Id. As to the computer containing this snippet, he points out that plaintiff's expert found no traces of BitTorrent activity or any peer-to-peer sharing program on that computer. Id. at 4. He denies having downloaded or deleted the file in question and points out that the expert report does not include any information about the nature of the file, its size, or its creation or deletion date, leaving open the possibility that it is a temporary record of an Internet Google search. Id. at 5.

Doe contends that evidence of third-party files dated between 2005 and 2010 predates his ownership of the computer and is irrelevant to this matter, and he posits that any deletions of others' works occurred when he reformatted the computer. Id. at 2-4. He also maintains that he would have gladly provided the Kingston Data Traveler G3 storage device, which he keeps at his work location, as well as the other USB storage devices, but that the expert's team only asked him for hard drives. Id. at 6. Doe offers to turn over the USB devices still in his possession (he admits to throwing out one device that failed, but observes that its last connection date predates all but one of the alleged infringements). Id.

In short, "[p]laintiff has never found direct evidence that any of their 14 movies were ever present in [d]efendant's computers." Id. at 9.

---

2015, in contravention of our January 6, 2015 Order requiring timely disclosure. See Def. Mem. in support at 1 and MSJ at 16-17; see also Jan. 6, 2015 Order. In short, plaintiff asks us and the defendant to rely on its say-so as to the content of those DMCA notices. We will decline to do so and accordingly disregard the redacted information.

We agree. For that reason, we will deny Malibu Media' motion for summary judgment. As Celotex requires, Doe has designated "specific facts showing that there is a genuine issue for trial," 477 U.S. at 324, that is, that Malibu Media has failed to make a prima facie case of copyright infringement because it has failed to show that any of its copyrighted works were on the defendant's devices.

As to the snippet of "Good Night Kiss," whether it is a preview, as the name indicates, or merely a word file, as Doe suggests, is immaterial: It is not a copy of the work itself. Our Court of Appeals's "substantial similarity" test obliges us to determine whether Doe copied from the plaintiff's work and whether the copying, if proven, constitutes an improper appropriation. Here we determine as a matter of law that there was no improper appropriation because no reasonable jury, properly instructed, could find that the data snippet bears a "substantial similarity" to Malibu Media's copyrighted work. We conclude that, even if Doe copied the preview, his copying would not be an improper appropriation violating Malibu Media's copyright of the entire film.

That Malibu Media chose not to ask for the missing storage devices after their existence became evident to its expert in no way bolsters its hollow claim. Nor are we impressed by the histrionics over alleged spoliation. Malibu Media, as the party seeking a spoliation sanction, bears the burden of proving there has been spoliation. Universal Underwriters Ins. Co., 2014 WL 7335668 at *4 (W.D.Pa. Dec. 19, 2014). Malibu Media makes much of what it called "additional evidence," that is, indications that Doe used his computer to infringe others' works between 2005 and 2010 -- well before the period at issue in this case -- and then sought to scrub the traces. Such efforts do nothing to establish Malibu Media's claim as to its copyrighted works. It is well-established that the statute of limitations to bring claims under the Copyright

13

Act is three years. 18 U.S.C. § 507(b). Therefore, the use and ownership of Doe's computers before 2011 are irrelevant here as a matter of law. While ongoing infringement supports a copyright violation from the date of the most recent infringing act, Petrella v. Metro-Goldwyn-Mayer, Inc., -- U.S. --, 134 S.Ct. 1962, 1969-71 (2014), Malibu Media of course has no standing to complain of alleged infringement of works to which it does not hold the copyrights. Because the alleged spoliation is not relevant to Malibu Media's claims in this case, and we hold there has been no actual suppression of relevant evidence, Malibu Media has failed to satisfy Bull's four-factor test.

Malibu Media's focus on alleged spoliation and testimony discrepancies cannot save its motion. Indeed, its vain efforts to agitate are particularly unseemly in light of our repeated rulings affording plaintiff wide latitude in its discovery. We find unsettling the gulf between Malibu Media's claims in this summary judgment motion and the actual evidence -- or, more to the point, the lack thereof -- its expert unearthed after extensive searches. And we find merit in the skepticism with which other district courts have greeted Malibu Media's discovery motions and subpoena requests in similar matters.

We turn to Doe's motion for summary judgment. Doe seeks summary judgment because, he argues, plaintiff has found no evidence that he either installed BitTorrent client software or used one to download any Malibu Media movies. Def. MSJ at 1. Doe, of course, as the party that does not have the burden of proof as to the underlying claim "has no obligation to produce evidence negating its opponent's case," National State Bank, 979 F.2d at 1582, but need only point to the lack of evidence supporting the non-movant's claim.

14

Doe does just that.[3] He argues that despite the plaintiff's assertions to the contrary, its use of subscriber information to identify him as the allegedly infringing IP subscriber failed to determine that he was the actual infringer. Def. MSJ at 18. The forensic expert's report likewise failed to show Doe had downloaded any Malibu Media copyrighted works. Id. at 25. Reviewing the expert's report, he points out that the expert does not describe the file he found and therefore no evidence exists that it "is even an actual movie, or remnant temporary internet data" possibly saved during searches after he was sued in this case. Id. at 14. He draws our attention to the expert's failure to convey "additional information regarding the data fragment's essential attributes," as a result of which he contends that "there's no way of knowing whether the data fragment in question contained any of [Malibu Media's] copyrighted materials." Id. at 15.

"Plaintiff has, despite having 7-8 weeks to analyze [d]efendant's hard drives, failed to provide sufficient facts supporting an inference that the subscriber of the account is, in fact, the individual who actually uploaded or downloaded [p]laintiff's movies[.]" Id. at 28.

John Doe also observes that plaintiff's continued assertions to the contrary, despite the absence of any evidence, violates Rule 11's requirement that "the factual contentions . . . have evidentiary support." Id.; see also Fed. R. Civ. P. 11(b)(3). He points to many decisions of other courts in which Malibu Media conceded that there was a reasonable likelihood a defendant had no involvement in the alleged illegal downloading. Id. at 26; see, e.g., Malibu Media LLC v. John Does 1-11, 2012 WL 1681823 (D.D.C. Apr. 11, 2012). He does not, however, move for sanctions under Rule 11. And, although we have the inherent power to sanction parties, see Ferguson v. Valero Energy Corp., 454 F. App'x 109, 114 (3d Cir. 2011), we will not do so in this

---

[3] Doe's motion reviews in considerable detail the expert's findings as to all four devices, but we need not dwell on these conclusions as we have already determined that all findings with respect to third parties and preceding this matter are irrelevant as a matter of law.

case as we have already denied plaintiff's motion for summary judgment.

Malibu Media urges us to deny Doe's motion. It argues that the ISP identified Doe as the subscriber of the IP address used to infringe its works. Pl. Resp. at 1. Malibu Media contends that Doe offers no evidence showing how someone else committed the infringement, when its investigation and Doe's deposition testimony show that no one else had access to the defendant's computer and so it could not have been anyone but Doe. Id. at 4. The plaintiff seeks to leverage its evidence of third-party works and BitTorrent client software, as detailed above. Id. at 5. It also again draws our attention to the expert's discovery of 'X-Art Angelica Good Night Kiss Preview' and another third-party file on Doe's computer. Id. at 7, 8. Finally, Malibu Media makes much of Doe's changing testimony concerning the existence of external storage devices which he did not disclose or turn over when asked to provide his computer devices.

But Malibu Media cannot prevail here because it does not identify any evidence upon which a jury could reasonably find for it. Malibu Media has failed to raise a genuine issue of material fact as to its copyright claims. As is well-established, a fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. None of plaintiff's responses in opposition is material in the absence of evidence that Doe downloaded or distributed any copyrighted Malibu Media works—a complete failure of proof concerning the essential element of its claim. Malibu Media has failed to show that there is a genuine issue for trial.

Plaintiff's efforts to shift its burden of proof onto the defendant are unavailing. However troubling Doe's evasive and shifting answers may be, none animate "disputes over facts that might affect the outcome of the suit" that would preclude summary judgment. Boyle, 139 F.3d at 393 (internal citation omitted). We will therefore grant Doe's pro se motion for summary

16

judgment.

An appropriate Order follows.

2/2/15 XC: John Doe